[Civ. No. 31452.   Second Dist., Div. One.   Aug. 29, 1967.]

THE PEOPLE ex rel. STANLEY MOSK, as Attorney General, etc., Plaintiff and Respondent, v. GEORGE LYNAM et al., Defendants and Appellants.

Jerrell Babb for Defendants and Appellants.

Thomas C. Lynch, Attorney General, and H. Warren Siegel, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—This is an action by the People of the State of California for an injunction restraining defendants George Lynam and Estate Organization Service from engaging in untrue and misleading advertising practices (Bus & Prof. Code, § 17500) in connection with the promotion of "pure trust" plans for the management of personal assets. Upon plaintiff's motion the court granted a summary judgment restraining defendants from engaging in several specified advertising practices. Defendants appeal from the judgment.

Appellants contend that the summary judgment procedure was not a proper means of determining the issues on the merits; that the court improperly considered certain "documents" in ruling upon the motion; and that plaintiff's notice of motion was insufficient.

Plaintiff's complaint, which is for injunctive relief against several defendants, including George Lynam, Joseph R. Brauner, and Estate Organization Service, incorporates several exhibits and alleges in substance that the defendants distributed, in California, untrue and misleading advertising in connection with the use and sale of "Pure Trust" indentures. There are also allegations with reference to agency and conspiracy among the defendants.

Depositions were taken of defendants Lynam and Brauner, and of Faith Field and Frederico Tamayo. Sworn answers of defendant Lynam to interrogatories were filed. A motion for a preliminary injunction restraining defendants from distributing certain untrue and misleading advertising, which motion was based upon several exhibits and upon the files in the action, was granted. A motion for summary judgment, based upon the files in the action and upon the deposition of defendant Lynam, and his answers to interrogatories, was granted in part as to defendants Lynam and Estate Organization Service.

Thereafter, plaintiff dismissed the action as to all defendants other than Lynam, Brauner, and Estate Organization Service, because such other defendants were "no longer engaging in business in California" and that an injunction "would serve no purpose as to them."

Plaintiff then made a motion for summary judgment against defendants Lynam, Brauner, and Estate Organization Service. The notice of motion states in substance that the motion will be based upon "all documents" in the files of this action, including the preliminary injunction and the orders made with reference to partial summary judgment. A declaration by counsel for the plaintiff accompanied the notice of motion. Said declaration states in part that since the granting of the partial summary judgment, plaintiff has dismissed the action as to all defendants other than Lynam. Brauner, and Estate Organization Service; that plaintiff abandons all allegations of the complaint with reference to agency and conspiracy; and that with the abandonment of such allegations, the previous orders for partial summary judgment finally determine the controversy because all elements necessary to the right to injunctive relief against defendants Lynam, Brauner, and Estate Organization Service have been established. Summary judgment was entered against said defendants. Defendants Lynam and Estate Organization Service appealed from the judgment. (Brauner did not appeal.)

In his deposition (and in several declarations and in answers to interrogatories), defendant Lynam admitted that he is the manager, treasurer, and a beneficial owner (with Maurice and Josephine Offley) of Estate Organization Service, a trust; that he and Estate Organization Service distributed to the public in California, by mail and by direct contact, various advertising materials (exhibits—part of deposition) for the promotion and sale of pure trusts; and that he obtains most of the advertising materials and obtains the forms for pure trust indentures from the American Family Foundation of Chicago.

Some of the statements and representations in the advertising materials are in substance as follows: A creator of a pure trust may be a trustee, and the sole beneficiary, of the trust. The creator may apply the income and principal of the trust for his own or his dependents' maintenance, may control the beneficial enjoyment of the income and corpus, and may operate and manage the trust as an income or profit activity and as a substitute for a voluntary association or corporation. Such a trust effectively protects the creator's assets from

personal liabilities, effectively prevents the probate of all assets transferred to the trust, and avoids all estate and inheritance taxes upon the creator's death. If attorneys and banks are asked about the validity of a pure trust, they would either be uninformed or unable to give an opinion, or, if they believed that a pure trust indenture was valid, they would conceal such opinion because a pure trust obviates the necessity for wills and for corporate trustees. No state can regulate the operation of a pure trust because such action would contravene the United States Constitution. The American Family Foundation of Chicago created a trust for the family of President Kennedy. The issuance of beneficial certificates by a pure trust is not subject to corporate security regulation. The income which might accrue to the trust is not taxable to the trust entity. Pure trusts cannot be challenged in any state or federal court or regulated by the laws of any state for the reason that the pure trust is guaranteed by the United States Constitution.

In defendant Lynam's declarations in opposition to the motions for summary judgment and partial summary judgment he declares in substance that he did not make any of the statements. He does not declare therein that he did not distribute the advertising materials.

The judgment enjoins and restrains defendants Lynam, Brauner, and Estate Organization Service from making, or causing to be made, any of the following statements, or statements which convey the thought contained therein:

''(i) That a creator of a 'Pure Trust' might by his declaration of purpose be the sole beneficiary of a 'Pure Trust' or may retain for himself the powers, *inter alia,* to apply income and principal for his own or his dependents' maintenance, to control beneficial enjoyment of income and corpus, to terminate the trust, to amend the terms of the trust, or to operate and manage the trust as an income or profit activity using the 'Pure Trust' as a substitute for a voluntary association or corporation, and that such a trust would be effective to protect the creator's assets from personal liabilities, to prevent probate of all assets transferred into the trust, and to avoid estate or inheritance taxes upon the creator's death.

''(ii) That if attorneys or banks were asked about the validity of a 'Pure Trust', they would either be uninformed and unable to give an opinion, or if they believed the 'Pure Trust' indenture to be valid, would conceal such opinion

because a 'Pure Trust' obviates the necessity for wills and obviates the necessity for corporate trustees.

"(iii) That no state could regulate the operation of a 'Pure Trust' because such action would be in contravention of the provisions of the United States Constitution.

"(iv) That the American Family Foundation of Chicago created a trust for the family of the late President John F. Kennedy.

"(v) That the issuance of beneficial certificates by a 'Pure Trust' is not in violation of the Corporate Securities Law of this state.

"(vi) That any income which might accrue to the trust is not taxable to the trust entity.

"(vii) That a 'Pure Trust' purportedly formed pursuant to the documents sold and distributed by defendants cannot be challenged in any state or federal court or regulated by the laws of any state for the reason that the 'Pure Trust' is guaranteed or protected by the United States Constitution.''

The judgment also enjoins and restrains said defendants from distributing any documents containing such statements and from aiding in the issuance of certificates representing a beneficial interest in any real estate investment trust unless a permit for issuance of securities has been obtained from the Commissioner of Corporations as required by section 25500 of the Corporations Code.

Appellants contend that the summary judgment procedure was not a proper means of determining the issues on the merits and that the court improperly considered the depositions and other documents (in the files of the action) in ruling upon the motion.

"The purpose of the [summary judgment] procedure is to discover, through the media of affidavits, whether the parties possess evidence which demands the analysis of trial.'' (*Kramer* v. *Barnes,* 212 Cal.App.2d 440, 445 [27 Cal.Rptr. 895].) "The use of depositions in support of, or in opposition to, a motion for summary judgment in conjunction with or in lieu of affidavits is, of course, proper.'' (Ibid, p. 444; see *Estate of Nelson,* 227 Cal.App.2d 42, 47 [38 Cal.Rptr. 459]; cf. *Hoston* v. *J. R. Watkins Co.* (9th Cir. 1962) 300 F.2d 869, 870.) It has also been said, in viewing the sufficiency of an affidavit made by a deputy city attorney in support of the city's motion for summary judgment, that the court "must not only look to the face of the affidavit but . . . must also examine the docu-

ments in the file which it incorporates . . . ." (*Newport v. City of Los Angeles*, 184 Cal.App.2d 229, 234 [7 Cal.Rptr. 497].) ██ It has also been said that "Admissions against interest may be incorporated by reference in a motion for summary judgment." (*Smith* v. *City of San Jose*, 238 Cal. App.2d 599, 601 [48 Cal.Rptr. 108].) ██ In the present case, as above shown, defendant Lynam admitted in his deposition that he distributed the advertising materials which contain the statements that the court enjoined defendants from making. The notice of motion for summary judgment states that the motion would be made on "all documents" in the files. The declaration of the deputy attorney general regarding that motion refers to the advertising materials and documentary evidence in the files, containing the allegedly untrue and misleading statements. (His declarations regarding the preliminary injunction and the motions for partial summary judgment also refer to such materials and evidence.) The court, in ruling upon the motion, properly considered the depositions (and deposition-exhibits) and the documents in the files.

██ Whether there was any triable issue remaining depends upon the interpretation of section 3369 of the Civil Code and section 17500 of the Government Code. Section 3369 authorizes the Attorney General to prosecute actions for injunction restraining "untrue or misleading advertising." Section 17500 provides, in part, that it is unlawful for any person, with intent directly or indirectly to dispose of property or to perform services or to induce the public to enter into any obligation, to make or disseminate in any advertising device, or in any manner, any statement concerning such property or services which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

In the present case, where defendant Lynam (owner and manager of defendant Estate Organization Service) admitted that he disseminated advertising materials to promote the sale of pure trust indentures to the public, the only issues remaining, upon the question as to injunctive relief under section 17500, are whether the statements in the advertising materials are "untrue or misleading," and whether the defendants knew, or by the exercise of reasonable care should have known, that the statements were true or misleading.

██ In *Audio Fidelity, Inc.* v. *High Fidelity Recordings, Inc.* (9th Cir. 1960) 283 F.2d 551, 554-555, the court noted

that section 17500 is phrased in "broad language," and said (p. 555) : "Irrespective of its truth or falsity, any statement which is deceptive or merely misleading, without intent to deceive, violates the statute." (See *People* v. *Wahl,* 39 Cal. App.2d Supp. 771, 773 [100 P.2d 550].)

In the present case the statements to which the injunction was directed, except the statement with reference to President Kennedy's family, are primarily statements concerning legal consequences (e.g., the law of probate proceedings, trusts, taxation, corporate securities regulation, and creditor-debtor relationships) arising from the creation of a pure trust. The court could properly take judicial notice of applicable law in determining whether the stated legal consequences were untrue or misleading. (Evid. Code, §§ 451, 452 [which sections became effective prior to date of motion for summary judgment] ; *Zinn* v. *Ex-Cell-O Corp.,* 148 Cal.App. 2d 56, 81-82 [306 P.2d 1017].)

The statements to the effect that the creator of a revocable trust,[1] as a trustee and sole beneficiary, may retain broad powers over the distribution of the principal and income of the trust, and despite such retention of powers may avoid federal estate and state inheritance taxes, are untrue and misleading. (See U.S. Int. Rev. Code, §§ 2036, 2037, 2038; Civ. Code, § 2280; Rev. & Tax. Code, §§ 13641-13648; *Lober* v. *United States,* 346 U.S. 335, 336-337 [98 L.Ed. 15, 17-18, 74 S.Ct. 98] ; *Struthers* v. *Kelm* (8th Cir. 1955) 218 F.2d 810, 813; *In re Inman's Estate* (2d Cir. 1953) 203 F.2d 679, 680-681.)

The statements to the effect that the creator of a trust could, despite retention of such broad powers, protect his assets from personal liabilities are untrue and misleading. (See *Estate of Schneider,* 140 Cal.App.2d 710, 717 [296 P.2d 45] ; 48 Cal.Jur.2d, Trusts, § 138, pp. 777-778.)

The statements to the effect that no state can regulate pure trusts because such trusts are guaranteed by the United States Constitution are untrue and misleading. Since beneficial certificates are issued by the trust, and since the trust may operate as a substitute for a voluntary association or a corporation, the trust would be subject to regulation by the state. (See Corp. Code, §§ 25003, 25004, 25008; *People* v. *Ferguson,* 134 Cal.App. 41, 51 [24 P.2d 965] ; *Barrett* v. *Gore,* 88 Cal.App.

---

[1]The advertising materials include statements to the effect that the trust will continue for 25 years unless earlier terminated. There is no statement that the trust is irrevocable.

372, 378 [263 P. 564].) With reference to the purported "guarantee" by the United States Constitution, Lynam stated in his deposition that immunity from state regulation was guaranteed by that clause of the United States Constitution which protects contracts from abrogation. No contract contrary to public policy, however, is protected by that clause. (See *Clay* v. *Sun Ins. Office, Ltd.,* 377 U.S. 179 [12 L.Ed.2d 229, 84 S.Ct. 1197].)

The statements to the effect that income accruing to the trust is not taxable to the trust (as an entity) are untrue and misleading (see Rev. & Tax. Code, § 17731; *McCulloch* v. *Franchise Tax Board,* 61 Cal.2d 186, 189-192, 198 [37 Cal. Rptr. 636, 390 P.2d 412]), especially when such statements are considered in conjunction with the statements that the trust can operate as a substitute for a corporation.

The statements to the effect that creation of a pure trust obviates the necessity for wills, corporate trustees, and probate proceedings are misleading. For example, if, as represented, the creator could be the sole beneficiary of the trust and also a trustee thereof, there would be a merger of the legal and equitable titles if he were the sole surviving trustee, in which event the trust would cease and the property would pass by the law of wills (or intestate succession) upon the creator's death. Moreover, the trust issues beneficial certificates (as evidence of interest in the trust assets), and such certificates would be assets of the certificate holder's estate upon such holder's death. (See Prob. Code, § 771.)

The statements to the effect that the American Family Foundation of Chicago (from which defendants obtained the trust forms and most of the advertising materials) created a pure trust for the family of President Kennedy are untrue and misleading. Faith Field, an officer of the American Family Foundation, stated, in her deposition, that the American Family Foundation was created in 1959 as a successor to the National Pure Trust Service. It thus appears that the American Family Foundation could not have created the Kennedy Family Trust, which the advertising material states was created in 1945.

Defendants Lynam and Estate Organization Service also knew, or by the exercise of reasonable care should have known, that the statements with reference to the legal consequences of pure trusts were untrue or misleading. "Everyone is presumed to know the law" (*Boehm* v. *Spreckels,* 183 Cal. 239, 245 [191 P. 5]), and defendants herein, who, in the

disseminated advertising materials, held themselves out to the public as experts in the law of trusts, taxation, and probate, are charged with knowledge of the aforementioned law applicable to such trusts. Even were defendants not charged with actual knowledge of the untrue or misleading nature of the statements relating to the legal consequences of pure trusts, they, by the exercise of reasonable care, should have known that the statements were untrue or misleading. The statements are made in an absolute, unqualified, and positive manner, and it has been said (*Lerner* v. *Riverside Citrus Assn.*, 115 Cal.App.2d 544, 547 [252 P.2d 744]) that if a person "makes such an absolute, unqualified and positive statement as implies knowledge on his part, when in fact he has no knowledge whether his assertion is true or false, and his statement proves to be false, he is as culpable as if he had wilfully asserted that to be true which he knew to be false. . . ."

With reference to the factual statements regarding the Kennedy family, defendants knew, or by the exercise of reasonable care should have known, that such statements were untrue or misleading. Those statements are also made in a positive and unqualified manner. Moreover, defendant Lynam stated in his deposition that he knew that the National Pure Trust Service ceased business in 1958. It can be presumed, therefore, that Lynam knew that American Family Foundation, which succeeded National Pure Trust Service, could not have created the Kennedy Family Trust in 1945.

Under the admitted evidence in the record, no issue of fact remained with reference to establishing plaintiff's right to injunctive relief under the provisions of section 17500 of the Business and Professions Code (and section 3369 of the Civil Code), and resort to summary judgment procedure was proper.

Appellants' contention that plaintiff's notice of motion (for summary judgment) was insufficient in form is without merit. Such contention appears to be based upon assertions that the declaration accompanying the notice of motion was an "orphan" (i.e., declaration was not referred to in notice of motion) and that the declaration was merely a conclusionary summary of what was in the depositions and files. As previously stated, the notice of motion provides that the motion will be based upon "all documents" in the files of the action. Although the notice does not specifically refer to any declarations, the declarations in support of the previous motions for summary judgment would be included in the

reference to "all documents," and the declaration which accompanied the notice apparently was affixed to the notice. Appellants' assertions with reference to alleged insufficiency of the declaration are not sustainable—the court properly considered the depositions.

The court did not err in granting plaintiff's motion for summary judgment.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied September 15, 1967, and appellants' petition for a hearing by the Supreme Court was denied October 25, 1967. Mosk, J., did not participate therein.